UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BCC MERCHANT SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-5185-B |
| | § | |
| JET PAY, LLC, TRENT R. VOIGT, and | § | |
| MERRICK BANK CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant JetPay, LLC's Motion for Adjudication under Federal Rule of Civil Procedure 56(g) (Doc. 280). For the following reasons, the Court **DENIES** the Motion.

## I.

## BACKGROUND

On September 8, 2015, the Court entered a Memorandum Opinion and Order granting summary judgment for JetPay against Plaintiff BCC Merchant Solutions, Inc.'s claims for, *inter alia*, fraud, fraudulent inducement, and violation of the Texas Deceptive Trade Practices Act. Doc. 279. The Court did not grant summary judgment on BCC's breach of contract claim, but did limit BCC's recovery to damages directly caused by JetPay's alleged breach. *Id.* The next day, JetPay filed a Motion for Adjudication under Federal Rule 56(g) directed at further limiting BCC's recovery to $30,000.00 under Section 6.1 of the allegedly breached contract—a Master Service Agreement (MSA). Doc. 182, App. 1–25 [hereinafter Master Service Agreement]. The parties submitted briefing that focused primarily on whether the Court should hear the Rule 56(g) motion. On October 13, 2015, the Court ordered the parties to provide additional briefing on the substance of their

Section 6.1 arguments. Doc. 305. JetPay filed a new brief, BCC filed a response, and JetPay filed a reply. Docs. 307, 309, 310. JetPay's Motion is now ripe for review.

## II.

### LEGAL STANDARD

Rule 56(g) of the Federal Rules of Civil Procedure provides that: "If the court does not grant all relief requested by the [summary judgment] motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Once the Court has applied the summary-judgment standard of Rule 56(a) to each claim and defense identified by the motion, it may also decide to expedite the adjudication by disposing of any undisputed material facts. Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. This decision is discretionary. *See U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 n.15 (5th Cir. 2014). "Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established." Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment.

## III.

### ANALYSIS

A.      *Rule 56(g)*

JetPay's Motion turns on the interpretation of Section 6.1 and Schedule A of the MSA. In relevant part, Section 6.1 states that:

> JETPAY's cumulative liability for any loss or damage, direct or indirect, for any cause whatsoever (including, but not limited to those arising out of or related to this Agreement) with respect to claims relating to events in any one 12-month period following the effective date of this Agreement shall, under any circumstances, be the lesser of:

> a. The amount of [BCC's] losses, damage, and liability including, but not limited to all costs and expenses incurred by [BCC], including attorney's fees and all cost of litigation or
>
> b. The amount of Processing Fees paid to JETPAY pursuant to this Agreement for services performed in the immediately preceding 12-month period, and in the case of the first 12-month period of the Agreement, any minimum processing fees specified for year one in Schedule A.

Master Service Agreement § 6.1. The Court has interpreted Section 6.1 as a limitation on JetPay's cumulative liability. Doc. 279, Mem. Op. & Order 58–59. But it has not addressed whether Section 6.1—a limitation of liability clause—is enforceable or the extent to which it limits liability.[1]

Schedule A provides a list for JetPay-BCC Processing Services Pricing. Included in the list is a Monthly Minimum section. This section indicates that minimum processing fees are "[w]aived for first six months until after full processing begins" and are then "$5,000.00 per month thereafter cumulative between BCC and Pinnacle Processing." Master Service Agreement, Schedule A. The Court has not interpreted Schedule A.

BCC alleges that JetPay breached the MSA leading to more than $515,346.00 in damages. JetPay contends in its Motion that Section 6.1 limits BCC's recovery to the amount of minimum processing fees specified for year one in Schedule A (i.e., $30,000.00). It asks the Court to limit "Plaintiff's available damages [as] established by the plain and unambiguous terms of the Master

---

[1] BCC has not attacked Section 6.1's enforceability. Generally under Texas law, limitation of liability clauses are enforceable. *See Sava Gumarska v. Advanced Polymer Sciences Inc.*, 128 S.W.3d 304, 317 (Tex. App.—Dallas 2004, no pet.). Instead, BCC has attacked whether Section 6.1 survived the termination or expiration of the MSA. Doc. 309, Pl.'s Resp. 3. If not, then Section 6.1 does not limit BCC's damages.

Specifically, BCC cites to *York Group, Inc. v. Horizon Casket Group, Inc.*, Nos. H-06-0262, H-05-2181, 2007 WL 2120424, at *4 (S. D. Tex. July 11, 2007), for the proposition that terms do not survive termination or expiration of the contract unless there is either express language providing that the terms survive or a general survival clause that includes the terms. Doc. 309, Pl.'s Resp. 3. Here, the MSA contains a survival clause. Master Service Agreement § 5.4 ("Payment for . . . any other obligation of liability . . . shall not be affected by termination of this agreement."). This clause includes cumulative liability under Section 6.1 Accordingly, Section 6.1 survives termination or expiration of the MSA.

Services Agreement [sic]. As such, the damages available to Plaintiff are not genuinely in dispute." Doc. 307, Def.'s Br. in Supp. 1–2. Essentially, JetPay requests the Court use Rule 56(g) to limit its liability to $30,000.00 under the MSA by treating this limit as an undisputed material fact.

Rule 56(g) provides a procedural mechanism for disposing of undisputed questions of material fact, not questions of law. As a result, the Court's ability to use Rule 56(g) turns on whether the relevant MSA provisions are ambiguous. Deciding whether a contract is ambiguous is a question of law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). As is the interpretation of an unambiguous agreement. *Id.* (Smith, J., dissenting); *AEP Tex. Cent. Co. v. PUC*, 286 S.W.3d 450, 464 (Tex. App.—Corpus Christi 2008, pet. denied) (citing *Weslaco Fed'n of Teachers v. Tex. Educ. Agency*, 27 S.W.3d 258, 263–64 (Tex. App.—Austin 2000, no pet.)). But the interpretation of an ambiguous agreement is a question of fact. *Webster*, 128 S.W.3d at 229. If a contract is ambiguous, it creates a fact issue on the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas*, 940 S.W.2d 587, 589 (Tex. 1996). As a result, if the MSA is unambiguous, whether it limits JetPay's liability is a question of law outside the scope of Rule 56(g). If it is ambiguous, however, the Court must decide whether to dispose of any related undisputed issues of material fact.

B.     *Contract Interpretation and Ambiguity*

The principal aim in construing a written contract is to discern the true intent of the parties as expressed through the contract's terms. *See Frost Nat. Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). In determining the parties' intent, the Court looks to the objective intentions expressed in the contract itself, and construes the contract's terms according to their plain meaning unless the contract itself provides an intended, different meaning. *Webster*, 128 S.W.3d at 229; *Heritage Resources v. Nationsbank*, 939 S.W.2d 118, 121 (Tex. 1996). The Court may consider

the context of the particular business activity governed by the contract and avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat. Bank*, 165 S.W.3d at 312.

"A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law," but it is ambiguous if subject to more than one reasonable interpretation. *Columbia Gas Transmission Corp. v. New Ulm Gas*, 940 S.W.2d at 589. The line between ambiguous and unambiguous is not as simple as determining whether the contract language lacks clarity. *See DeWitt Cnty. Electric Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Genuine disagreement between the parties about a contract's meaning can destroy clarity without creating an ambiguity. *Dynegy Midstream Servs. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). An ambiguity arises only when a contract's "meaning is uncertain and doubtful or reasonably susceptible to more than one interpretation." *Heritage Res., Inc.*, 939 S.W.2d at 121.

Both parties assert that Section 6.1 and Schedule A are unambiguous, but the parties' "unambiguous" interpretations of Schedule A conflict. On the one hand, JetPay takes the position that BCC is entitled to recover under Section 6.1(b), which unambiguously limits JetPay's liability to the amount of processing fees paid to JetPay during the first twelve-month period of the agreement, and that Schedule A unambiguously sets those minimum processing fees at $30,000.00 ($0.00 per month for the first six months and $5,000.00 per month for the next six). Doc. 307, Def.'s Br. in Supp. 2–4. On the other hand, BCC takes the position that Schedule A unambiguously institutes a waiver period starting six-months after full processing begins. Doc. 309, Pl.'s Resp. 4. BCC argues that because full processing never began, the waiver period never began, which would entitle it to full recovery under Section 6.1(a). This genuine disagreement between the parties does not create an ambiguity. *See Dynegy Midstream Servs.*, 294 S.W.3d at 168.

Section 6.1 unambiguously limits JetPay's cumulative liability to the lesser amount found under Section 6.1(a) or Section 6.1(b). If the amount under Section 6.1(b) is less than that under 6.1(a), and if the immediately preceding twelve-month period is also the first twelve-month period of the agreement, minimum processing fees must be calculated as specified in Schedule A.

Schedule A is not ambiguous. BCC's interpretation of Schedule A amounts to a unilateral misinterpretation that does not raise any uncertainty. *See Esty v. Beal Bank S.S.B. & CSG Invs.*, 298 S.W.3d 280, 300 (Tex. App.—Dallas 2009, no pet.).[2] Key to this conclusion is the word "until." BCC argues that Schedule A institutes a waiver period starting six-months after full processing begins. This is incorrect. Schedule A provides: "Waived for first six months *until* after full processing begins." Master Service Agreement, Schedule A (emphasis added). The words "Waived for first six months" have one plain meaning. *Id.* Schedule A waives minimum processing fees for the first six months. "Until after full processing begins" implies a period during which no processing or partial processing occurs during this first six months. *Id.*[3] Construed together, these phrases objectively indicate the parties' intent to waive processing fees for the first six months, at which time they assumed full processing would have begun. Said another way, the word "until" expresses an intent that the waiver period would take place during a period of partial processing (i.e., while JetPay ramped up from partial processing to full processing). The parties anticipated this would take the "first six months."

---

[2] BCC alternatively raises an ambiguity question as to which part of Schedule A Section 6.1 refers. Section 6.1 uses the term "minimum processing fees" and states that Schedule A specifies these fees. Schedule A lists the JetPay-BCC processing service fees and has a "Monthly Minimum" section. The word "minimum" appears nowhere on the schedule but this section. From this, the Court concludes that there is no ambiguity: Section 6.1 refers to the Monthly Minimum section of Schedule A.

[3] JetPay explains this: "Furthermore, 'until after full processing begins' can only mean until after Plaintiff transfers fully onto JetPay's platform. By definition, 'full processing' means fully processing with a particular processor." Def.'s Reply 5.

*Id.* Thus, the waiver would apply for the first six months, after which, the waiver would terminate because full processing should have begun. Because the Court can assign Schedule A's language a definite meaning as a matter of law, it is not ambiguous.

But the language of Section 6.1(b) is ambiguous. As stated above, Section 6.1 limits liability to the lesser amount found under Section 6.1(a) or Section 6.1(b). The amount under Section 6.1(b) is: "The amount of Processing Fees paid to JETPAY pursuant to this Agreement for services performed in the immediately preceding 12-month period, *and in the case of* the first 12-month period of the Agreement, any minimum processing fees specified for year one in Schedule A." Master Service Agreement § 6.1(b) (emphasis added). It is uncertain whether this language means that: (1) the amount is *either* the amount of processing fees paid to JetPay for services in the immediately preceding twelve-month period *or* $30,000.00 if it is the first twelve-month period; or (2) the amount is *both* the amount of processing fees paid to JetPay for services in the immediately preceding twelve-month period *and* $30,000.00 if it is the first twelve-month period.[4] Essentially, it is unclear whether the two clauses should be construed as alternatives or construed cumulatively.

Neither party has squarely addressed this ambiguity.[5] JetPay appears to take the position that the two clauses are alternatives. It translates the language "and in the case of" into "or in the case of." Doc. 310, Def.'s Reply 8 (emphasis omitted). Also, it assumes *arguendo* that the Court could choose not to limit its liability to $30,000.00, but instead limit it to the amount of processing fees

---

[4] This follows Schedule A and assumes a full six month period of minimum fees ($5,000.00 per month) following the six month waiver period.

[5] The Court may conclude that a contract term is ambiguous even without either party making such a pleading. *See Sage St. Associates v. Northdale Const. Co.*, 863 S.W.2d 438, 445 (Tex. 1993).

paid to JetPay in the immediately preceding twelve-month period. *Id.* Following this assumption, the Court could select either one or the other, but not both. This makes sense given that the language of Section 6.1 expresses an intent to limit cumulative liability, and construing Section 6.1(b) as providing two alternatives, one that further limits liability, accords with this intended purpose. Thus, construing the two clauses as alternatives is a reasonable interpretation.

That being said, it is also reasonable to construe them as cumulative. The plain meaning of Section 6.1(b), specifically the use of the word "and," objectively indicates that the amount should be the sum of processing fees paid to JetPay for services in the immediately preceding twelve-month period *and* those from Schedule A (assuming it is the first twelve-month period).

Considering the context of this particular business activity—financial transaction processing—and the assumption that ramping up to full processing could take six months, *supra* note 3 and accompanying text, a construction that adds the amounts from these two clauses possibly avoids an inequitable construction. Hypothetically, if Section 6.1(b) did not have the second clause, it might unreasonably limit liability during the first twelve-month period. Because of the ramping up period, processing fees during would logically be lower in the first year than in later twelve-month periods during which full processing would have begun. While Section 6.1(b) does have a second clause, construing it as an alternative limits liability even more unreasonably than if it was not part of the MSA. Here, it would limit BCC's possible recovery of $515,346.00 to $30,000.00.

Construing the two clauses cumulatively, however, remedies any unfairness because it takes into account that fees during the first twelve-month period will be lower than later periods, and raises the limit on liability by the amount of Schedule A's minimum processing fees. Thus, the contract language and intended purpose of this section support a cumulative construction. Therefore, this

- 8 -

construction is a reasonable interpretation.

Because these two reasonable interpretations conflict, the Court concludes that the language "and in the case of" creates an ambiguity that the Court cannot resolve as a matter of law. Instead, this ambiguity should be resolved by the jury, who will already be tasked with deciding related facts like the amount of damages. *See* Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment ("[I]t is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event."). The parties did not identify this ambiguity, so they also did not present summary judgement evidence on the point. Thus, the Court, in its discretion, neither makes a finding on any undisputed material facts nor treats any such facts as established to expedite the adjudication. *See id.* Accordingly, the Court cannot definitively limit BCC's damages to $30,000.00.

## IV.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant JetPay, LLC's Motion for Adjudication under Federal Rule of Civil Procedure 56(g) (Doc. 280).


SO ORDERED.

SIGNED: December 18, 2015.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 9 -