UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BCC MERCHANT SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-5185-B |
| | § | |
| JET PAY, LLC, TRENT R. VOIGT, and | § | |
| MERRICK BANK CORPORATION, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants JetPay, LLC's and Trent R. Voigt's Motion to Strike Plaintiff's

Expert Reports and Exclude Testimony of Plaintiff's Expert Witnesses J. Larry Daniels and Donald

R. Smith (Doc. 190) [hereinafter Defendants' Motion]. For the following reasons, the Court

**GRANTS in part** and **DENIES in part** Defendants' Motion.

## I.

## BACKGROUND

A.    *Expert Witness J. Larry Daniels*

On June 11, 2013, the Court entered a scheduling order that set deadlines for expert

designations, expert reports, rebuttal designations, and rebuttal reports. Doc. 22, Scheduling Order

1–3. In accordance with the scheduling order, Plaintiff BCC Merchant Solutions, Inc. (BCC)

provided a Preliminary Expert Disclosure Statement that designated numerous expert witnesses,

including Donald R. Smith (Smith). Doc. 191-3, Defs.' App. 10. BCC, however, did not provide

retained expert witness reports. Because of this, Defendants moved to exclude the testimony of

BCC's expert witnesses. Doc. 75.[1] The Court referred the motion to the magistrate judge who denied it and ordered BCC to submit its expert reports by November 10, 2014. Doc. 121, Order 8.

As ordered, BCC timely submitted its expert reports, including the Expert Witness Report of J. Larry Daniels & Donald R. Smith (the November Report). Doc. 191-4, Defs.' App. 13.Though BCC had not previously designated J. Larry Daniels (Daniels) as an expert witness, it listed him as a damages expert in the November Report. Doc. 191-4, Defs.' App. 13. To make the designation official, BCC provided a Supplemental Rule 26(e) Disclosure on December 5, 2014 (the December Amendment). Doc. 191-5, Defs.' App. 24.

Defendants move to strike Daniels as an expert witness because BCC did not designate him by the original scheduling order's deadline, March 17, 2014. *See* Doc. 22. In response, BCC explains that "between his designation and November 10, 2014, Mr. Smith began treatments for cancer." Doc 208, Pl.'s Resp. 2. Because BCC anticipated Smith's treatments might preclude him from testifying at deposition or at trial, it brought Daniels in to help prepare the November Report. *Id.* at 2–3. BCC takes the position that the November Report disclosed Daniels as an expert, and that the December Amendment's official designation served as a mere formality. *Id.* at 3. In the months following the December Amendment, Smith withdrew as a testifying expert, and BCC de-designated him. *Id.* (citing Doc. 209, Pl.'s App. 1–2).

B.    *The March Report*

In the November Report, Smith and Daniels approximated BCC's damages to be between $1,700,000 and $2,200,000 by comparing the valuation of BCC's merchant portfolio before and after

---

[1] Rule 26(a)(2) requires expert disclosures to include retained expert witness reports.

its conversion to JetPay's processing platform.[2] Doc. 191-4, Defs.' App. 15. On December 30, 2015, Defendants provided their Designation of Expert Witnesses and Supplemental Disclosures, which included the designation and expert report of Peter Davidson (Davidson) who contested the November Report for: (1) not providing individual merchant detail sufficient to know "why each merchant actually left," which "is necessary to ascertain the true decrease, if any, in the value of BCC's [merchant] portfolio"; and (2) addressing lost value rather than lost profits.[3] *See* Doc. 208, Pl.'s Resp. 3 (citing Doc. 191-6, Defs.' App. 40, Davidson's Expert Report). Three months later, on March 30, 2015, BCC served an Amended Expert Witness Report of J. Larry Daniels (the March Report). Doc. 191-7, Defs.' App. 84. This report appears to have been aimed at addressing these two deficiencies by incorporating merchant-level data taken from a survey conducted in January 2015 (the January Survey), and by examining merchant and agent attrition to calculate lost profits. *See id.*, Defs.' App. 89.

Defendants move to strike the March Report because of its late timing and prejudicial nature.

---

[2] For a detailed recount of the facts of the underlying case, *see* Doc. 279, Mem. Op. and Order. 2–3.

[3] Defendants draw the distinction between lost value and lost profits to undercut BCC's damages theory. *See* Doc 191-1, Br. in Supp. 10. Davidson's Expert Report asserts that the November Report's lost value calculations do not provide sufficiently granular detail to determine actual lost profits. *See* Doc. 191-6, Defs.' App. 40. And BCC's counsel stated during the deposition of Richard Noble that it seeks lost profits damages. Doc. 191-9, Defs.' App. 111–12, Dep. of Richard William Noble 106:25–107:20. From this, the argument goes that while BCC requests damages specifically for lost profits, the November Report does not address lost profits, meaning BCC's expert cannot testify to lost profits at trial. Without this testimony, BCC cannot prove damages.

This argument is incorrect. It assumes that establishing lost value does not demonstrate lost profits. Having considered the November Report, the Court concludes that lost value, from a macro perspective, represents lost profits. So establishing the former demonstrates the latter, at least to some degree. It is unnecessary for the Court to determine the amount of lost value or to what degree lost value translates to lost profits; those are questions best left for the trier of fact. It is enough that the Court concludes there is some connection between the two.

Doc. 191-1, Br. in Supp. 7. BCC served the report months after the November 10 expert reports deadline,[4] and, according to Defendants, after they had conducted significant "discovery, investigation, research, and depositions" based on the November Report. *Id.* at 7–8. Specifically, eight depositions occurred between the November Report and March Report, including the deposition of BCC's CEO and designated 30(b)(6) corporate representative Richard Noble. *Id.* at 6–7 (chart);[5] *see also* Doc. 191-9, Defs.' App. 97, Dep. of Richard William Noble. Additionally, Defendants claim to have made numerous strategic decisions based upon BCC's November Report:

> [D]ecisions were made regarding which witnesses to depose and not depose and what questions to ask the witnesses who were deposed. Defendants made decisions regarding whether to depose merchants regarding the damages sought based on the opinions and basis in Plaintiff's original expert report. Also, decisions were made regarding Defendants' decision to hire certain experts to rebut Plaintiff's contentions regarding damages.

Doc. 191-1, Br. in Supp. 8.

BCC counters that the March Report, though styled as an "Amended" report, "is more properly characterized as a supplemental report or sur-rebuttal." Doc. 208, Pl.'s Resp. 4. It argues that the March Report either supplements the November Report by "incorporating results of the recent surveys," or rebuts Davidson's Expert Report by tackling head-on the issue of lost profits. *Id.* Additionally, BCC maintains that it has attempted to mitigate any prejudice to Defendants "by offering to re-submit its Rule 30(b)(6) witness [Richard Noble] (at Plaintiff's cost)." *Id.* at 5.

---

[4] Defendants also point out that BCC served the March Report the day before the dispositive motion deadline. As Court has already ruled on summary judgment, it will not address this aspect of Defendants' Motion.

[5] Other individuals deposed include: (1) Shivron Enjeti, JetPay Chief Technical Officer; (2) Aliki Liadis-Hall, former JetPay employee; (3) Dave Chester, JetPay Chief Operational Officer; and (4) Trent R. Voigt, JetPay CEO, 30(b)(6) corporate representative, and expert witness. Three Merrick Bank witnesses also were deposed, but as Merrick is no longer part of this litigation, these depositions have little relevance.

Defendants' Motion is now ready for review.

## II.

## LEGAL STANDARD

A.    *Disclosure of Expert Testimony*

Under Federal Rule of Civil Procedure 26(a)(2)(A), a party who retains an expert to provide expert testimony in a case must disclose the identity of the expert. This disclosure must be accompanied by an expert report that contains: (1) a complete statement of all opinions of the expert and the reasons for them; (2) the facts or data the expert considered in forming his opinions; (3) any exhibits he used to summarize or support his opinions; (4) the expert's qualifications including publications; (5) a list of other cases the expert has provided expert testimony in during the previous four years; and (6) a statement of the expert's compensation in the instant case. Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi).

Generally, a party designates its experts and discloses its expert reports "at the times and in the sequence that the court orders." *See id.* 26(a)(2)(D). This includes designating rebuttal experts and disclosing rebuttal reports intended solely to contradict or rebut evidence in another party's expert reports. "Absent a stipulation or a court order," rebuttal reports must be disclosed within thirty days of the other party's disclosure of expert testimony. *Id.* 26(a)(2)(D)(ii). However, Rule 26 does not address the availability and timing of sur-rebuttal reports. "The Rule does not grant any right to rebuttal beyond that initial rebuttal report." *La. Health Care Self Ins. Fund v. United States*, CIV.A. 12-766, 2014 WL 3720526, at *1 (M.D. La. July 25, 2014). But it also does not "prohibit the filing of sur-rebuttal reports. Instead, a party wishing to provide a sur-rebuttal must first seek leave of Court." *Id.* (collecting cases).

- 5 -

Additionally, a party must supplement a disclosure pursuant to Rule 26(e) if (1) "the party learns in some material respect the disclosure . . . is incomplete or incorrect," and (2) "additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," *id.* 26(e)(1)(A), by the time pretrial disclosures are due. *Id.* 26(e)(2). This is a duty to supplement disclosures discovered to be incomplete or incorrect, not an opportunity to provide information previously omitted. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996) ("The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.").

B.      *Failure to Properly Disclose*

If a party fails to provide information as required under Rule 26(a) or (e), he may not use that information or witness to "supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless. *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *see also Wilson v. Home Depot U.S.A., Inc.*, 3:12-CV-5292, 2014 WL 1882024, at *2–3 (N.D. Tex. May 12, 2014) (Boyle, J.). In exercising this discretion, the Court considers four factors: (1) the reason for the failure to properly disclose; (2) the importance of the disclosure; (3) the potential prejudice in allowing the disclosure; and (4) the availability of a continuance to cure such prejudice. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007); *Sierra Club, Lone Star Chapter*, 73 F.3d at 572.

# III.

# ANALYSIS

The Court now considers whether to exclude J. Larry Daniels's expert testimony or strike his March Report. For each, the Court must determine whether BCC actually violated Rule 26, and if so, whether the violation was substantially justified or harmless under the *Sierra Club/Betzel* factors. *See Betzel*, 480 F.3d at 707; *Sierra Club, Lone Star Chapter*, 73 F.3d at 569.

A.      *Expert Witness J. Larry Daniels*

BCC's late designation of J. Larry Daniels was clearly untimely and in violation of Rule 26, but after considering the *Sierra Club/Betzel* factors, the Court finds that the violation was substantially justified or harmless. First, BCC provides an explanation for its failure to identify the expert within the designated timetable: it brought Daniels in to help prepare the November Report because Smith, its previously-designated damages expert, began cancer treatments. As it became clear he could not proceed, BCC de-designated Smith and replaced him with Daniels. This explanation provides a reasonable justification for BCC's actions.

Second, once BCC de-designated Smith, Daniels became its only damages expert able to speak to the November Report. The parties agree that the issue of damages is extremely important in this case, and that establishing damages will require expert testimony. *See Betzel*, 480 F.3d at 707 (finding expert testimony to be essential when plaintiff could not prove damages without it). This means Daniels's testimony has significant importance, which supports not excluding it.

Additionally, there is no indication that Defendants suffered any prejudice by the late designation because BCC gave notice of its intent to proffer Daniels as a damages expert by listing him in the November Report, which was timely disclosed. Even so, any possible prejudice can be

- 7 -

cured by allowing Defendants time to depose Daniels. "[A] continuance is the preferred means of dealing with a party's attempt to designate a witness out of time." *Id.* at 708 (internal quotation marks omitted) (quoting *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998)).[6] Here, Defendants have known for some time that BCC intended to present Daniels's expert testimony at trial. If they have not already taken his deposition, *see* Doc. 299, Final Pre-Trial Materials 19, ¶ 24(iii) ("Mr. Daniels has not been deposed in this case."), they may request a continuance to do so; however, they should be able to coordinate with BCC on a time and place to take Daniels's deposition before pretrial disclosures are due (April 8, 2016) without need for a continuance. Therefore, the Court finds no basis to exclude his testimony.

B.     *The March Report*

Whether BCC's untimely disclosure of the March Report violated Rule 26 depends on if the Court considers the report an amended, supplemental, or sur-rebuttal report. Defendants argue that it is an amended report. This would mean BCC disclosed it more than four months late, clearly in violation of the Rule. BCC urges the Court to consider it a supplemental or sur-rebuttal report. As a supplemental report BCC could have disclosed it up until the time for pretrial disclosures without violating Rule 26. *See* Fed. R. Civ. P. 26(e)(2). And as a sur-rebuttal report BCC could have disclosed it if it first sought leave of the court. *La. Health Care Self Ins. Fund*, 2014 WL 3720526, at *1 ("[A] party wishing to provide a sur-rebuttal must first seek leave of Court.").

---

[6] In *Betzel* the Fifth Circuit held that "[a] continuance would have given State Farm an opportunity to [1] depose Matlock and Frantz as expert witnesses, [2] to file *Daubert* challenges, and [3] to designate experts for rebuttal." The main purpose of a continuance in this case would be to allow for Defendants to depose Daniels. Defendants have already filed a *Daubert* challenge against him, and were able to designate experts to rebut his November Report.

The March Report is not a supplemental report. Rule 26(e) creates a duty to supplement when a party discovers some material aspect of a previous disclosure is incomplete or incorrect and other parties are not privy to the additional or corrective information. It is not an opportunity for a party to circumvent the Rule 26 requirement that an expert report contain "a *complete* statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added); *Sierra Club, Lone Star Chapter*, 73 F.3d at 571. Here, the November Report calculated lost value but did not provide individual merchant data to substantiate its calculations. BCC appears to have treated this lack of detail as an incomplete aspect of its original report that the March Report supplements with an analysis of the January Survey. This analysis, however, does not seem like a necessary supplement as BCC provided it to bolster weaknesses in the November Report in response to criticisms from Davidson's Expert Report. Even assuming the survey created a duty to supplement, it would have been sufficient to turn over the information from the survey itself to Defendants. From this, the Court concludes that the March Report goes well beyond supplementation, and cannot be disclosed under Rule 26(e).

So at best, the March Report is a sur-rebuttal report. As such, it was improperly disclosed because BCC did not seek leave to serve the March Report. Doc. 208, Pl.'s Resp. 9 ("Perhaps, it might have been more appropriate for Plaintiff to seek leave to serve the March Report."); *see also La. Health Care Self Ins. Fund*, 2014 WL 3720526, at *1. Thus, BCC's disclosure of the March Report was either untimely (if treated as an amended report) or improper (if treated as a sur-rebuttal report). Therefore, it disclosure violated Rule 26.

After considering the *Sierra Club/Betzel* factors, the Court concludes that the violation was neither substantially justified nor harmless. First, BCC's reason for its untimely disclosure was

because "the report [wa]s directed to Defendants' own rebuttal reports." Doc. 208, Pl.'s Resp 10. BCC argues that "the fact that the March Report (in part) [wa]s based on new evidence obtained after receipt of those reports constitute [sic] reasonable explanation for delay." *Id.* This explanation provides little justification. There is no right to a sur-rebuttal, so this "delay" was unwarranted. *See La. Health Care Self Ins. Fund*, 2014 WL 3720526, at *1. Thus, this factor weighs in favor of striking the March Report.

Second, the importance of the March Report is unclear. On one hand, it expresses expert opinions on damages, and expert testimony is necessary to establish BCC's damages. This weighs against striking the report. *See Betzel*, 480 F.3d at 708 (holding that importance weighs against exclusion). On the other hand, BCC should have provided a "complete statement of all opinions the witness will express and the basis and reasons for them" for such an important report instead of disclosing a second report with different opinions and underlying bases.[7] Fed. R. Civ. P. 26(a)(2)(B)(i). This weighs in favor of striking the report. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) ("[T]he claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines."); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (assuming testimony was important to "case—so much the more reason to be sure its introduction was properly grounded"). Thus, the Court will treat this factor as neutral.

---

[7] The March Report appears to change BCC's damages theory and to rely on a completely different set of information. *Compare* the November Report, Doc. 191-4, Defs.' App. 20 (analyzing lost value, relying on processor data and files to calculate transactional net income), *with* the March Report, Doc. 191-7, Defs.' App. 88–89 (analyzing lost profits as a result of lost merchant sales and sales agent attrition, relying directly on previously unknown or unincorporated information like the January Survey).

Third, the potential prejudice here is immense. "The purpose of the requirement to exchange expert reports is to eliminate unfair surprise to the opposing party and to conserve resources." *Boudreaux v. J.P. Morgan Chase & Co.*, CIV.A. 07-555, 2007 WL 4162908, at *3 (E.D. La. Nov. 21, 2007). Defendants have been deprived of an opportunity to depose Richard Noble, as well as four other relevant witnesses, on the topic of BCC's new damages theory, and to rebut the March Report with their own experts.

Fourth, a continuance would not cure the potential prejudice. Essentially, Defendants were unfairly surprised in a way that will prejudice them either strategically or monetarily. Even though BCC has offered (at its own expense) to allow Defendants to re-depose Richard Noble, it cannot provide for the possible strategic advantages they might have gained by deposing other witnesses on the topic or by selecting different rebuttal experts. And if Defendants attempt to gain this strategic advantage, they will bear the cost of additional depositions and possibly additional expert costs. Either way, a continuance will not cure the prejudice. Therefore, the Court finds that BCC's disclosure of the March Report violated Rule 26 and was neither substantially justified nor harmless. Accordingly, the Court **STRIKES** the March Report.[8]

C.      *Daubert Hearing*

Defendants also request that the Court conduct a *Daubert* hearing to establish that Daniels's "proffered expert opinions are relevant, reliable, and helpful." Doc. 191-1, Br. in Supp. 23. The Court agrees that a hearing on Defendants' *Daubert* motion is appropriate. It will hold the hearing as part of the pre-trial conference. At the hearing, lead counsel must be prepared to discuss their respective

---

[8] The availability of the November Report mitigates the harshness of striking the March Report.

positions regarding the motion. Any exhibits that may be used at the hearing, and lists of witnesses that may be called, must be exchanged with opposing counsel at least three days before the hearing. Each side will have sixty (60) minutes to argue their positions on the motion.

## IV.

## CONCLUSION

For these reasons, Defendants JetPay, LLC's and Trent R. Voigt's Motion to Strike Plaintiff's Expert Reports and Exclude Testimony of Plaintiff's Expert Witnesses J. Larry Daniels and Donald R. Smith (Doc. 190) is **GRANTED in part** and **DENIED in part**. The Court **STRIKES** the Amended Expert Witness Report of J. Larry Daniels (i.e., the March Report) but does not exclude Daniels as an expert witness. Daniels may testify concerning the November Report, and Defendants may depose him about it. Additionally, the Court **GRANTS** Defendants' request for a *Daubert* hearing.

SO ORDERED.

SIGNED: February 19, 2016.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 12 -