UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BCC MERCHANT SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-5185-B |
| JETPAY, LLC, TRENT R. VOIGT, and MERRICK BANK CORPORATION, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff BCC Merchant Solutions, Inc.'s (BCC) Motion to Enforce Compromise Settlement Agreement, filed on May 26, 2016. Doc. 328, Pl.'s Mot. to Enf. BCC contends that JetPay, LLC and Trent R. Voigt (collectively Defendants) breached the express terms of the parties' signed settlement agreement by not delivering settlement funds to BCC by May 6, 2016. Defendants counter that there is nothing left to enforce because settlement funds were ultimately delivered within 30 days of signing the agreement. In deciding whether to grant BCC's Motion, the Court considers whether Defendants breached the settlement agreement by not delivering settlement funds to BCC by May 6, 2016, ten days prior to Defendants having signed the agreement. For the following reasons, BCC's Motion is DENIED as moot.

I.

BACKGROUND

A.  *Factual History*

After over three years of litigation, the Court referred the only remaining dispute in this case—BCC's breach of contract claim against JetPay—for mediation on December 19, 2015. Doc. 314.[1] The mediation took place in early March 2016 before the Honorable Jeff Kaplan, and the Court received an Alternative Dispute Resolution Summary on March 17, 2016, indicating that a settlement had been reached. Doc. 319. As a result, the Court issued an Order the following day requiring the parties to file a joint stipulation of dismissal or agreed final judgment by April 18, 2016. Doc. 320.

On April 6, 2016, counsel for BCC emailed an unsigned draft of a settlement agreement to counsel for Defendants. Doc. 328-3, Pl.'s Mot. to Enf., Ex. 1 at 1.[2] In this draft are three provisions which form the crux of the present dispute. First, the opening paragraph of the draft agreement states the following:

> This Compromise Settlement Agreement ("Agreement") is made and entered into by and among, BCC Merchant Solutions, Inc. ("BCC"), JetPay, LLC ("JetPay"), and Trent R. Voigt ("Voigt"), individually (collectively, the "Parties"), effective April 6, 2016.

Doc. 328-3, Pl.'s Mot. to Enf., Ex. 1 at 2.

---

[1] The details of the underlying lawsuit were previously outlined in detail in the Memorandum Opinion and Order of September 8, 2015 (Doc. 279), which dismissed all of BCC's claims save the breach of contract claim against JetPay. For this reason, and because they are not relevant to the resolution of the pending Motion, the details of the original suit are omitted here.

[2] As noted within, this factual history is drawn from the briefing of the parties, primarily from BCC's Motion to Enforce and the attached exhibits. Any disputed facts, however, will be noted as such.

The next provision of note is found in the paragraph labeled paragraph four of this draft, which states that Defendants "agree to deliver payment to BCC in the sum of two hundred thousand dollars . . . within 30 days of the effective date of this Agreement." *Id.* at 4.[3]

Lastly, the paragraph labeled paragraph five of the draft provides that "[u]pon receipt of this executed Agreement and the payment referenced in Paragraph 4 above," the parties agreed to file a motion to dismiss their claims with prejudice. *Id.* at 5.[4]

On April 12, 2016, counsel for Defendants returned an unsigned draft—described as a "redline" in the email to which it was attached—to counsel for BCC by email. Doc. 328-4, Pl.'s Mot. to Enf., Ex. 2 at 1. This "redline" recommended several unrelated edits but did not alter any of the provisions mentioned above. *Id.* at 3–10. Specifically, "April 6, 2016" remained the "effective date" in the first paragraph, paragraph four still said that payment of settlement funds was due "within 30 days of the effective date of this Agreement," and paragraph five still conditioned the filing of the motion of dismissal upon receipt of settlement funds.

Also on April 12, 2016, the parties jointly filed an Agreed Motion for Extension of Time to File Stipulation of Dismissal. Doc. 322. The joint motion indicated that the parties had exchanged drafts of the settlement agreement but had not yet agreed upon the final language and requested two additional weeks to file the stipulation of dismissal, or until May 2, 2016. *Id.* The Court granted the

---

[3]This paragraph is labeled paragraph five in later drafts due to unrelated changes elsewhere in the document, however, the language of the paragraph remains unchanged throughout all drafts. *See* Doc. 328-5, Pl.'s Mot. to Enf., Ex. 3 at 7; Doc. 328-6, Pl.'s Mot. to Enf., Ex. 4 at 6; Doc. 328-7, Pl.'s Mot. to Enf., Ex. 5 at 7; Doc. 326-1, Pl.'s Adv., Attach. 1 at 5.

[4]This paragraph is labeled paragraph six in later drafts due to unrelated changes elsewhere in the document, however, the language of the paragraph remains unchanged throughout all drafts. *See* Doc. 328-5, Pl.'s Mot. to Enf., Ex. 3 at 7; Doc. 328-6, Pl.'s Mot. to Enf., Ex. 4 at 6; Doc. 328-7, Pl.'s Mot. to Enf., Ex. 5 at 7; Doc. 326-1, Pl.'s Adv., Attach. 1 at 5.

requested extension on April 13, 2016. Doc. 323.

On May 2, 2016, counsel for Defendants sent an email to counsel for BCC inquiring as to the changes suggested by Defendants' "redline" draft from April 12. Doc. 328-5, Pl.'s Mot. to Enf., Ex. 3 at 2. That same day, BCC's counsel responded with a marked-up version of their own, requesting that Defendants' counsel "review and advise" regarding the "proposed changes." *Id.* at 1. This (now third) draft incorporated some of the changes from Defendants' "redline" draft, rejected others, and added some new changes. Again, this draft was not signed, and no changes were made to the three provisions specifically noted above. *Id.* at 3, 7.

Also on May 2, 2016, the parties filed an Agreed Second Motion for Extension of Time to File Stipulation of Dismissal, indicating that they had exchanged what they believed to be the final versions of the settlement agreement. Doc. 324 at 1. This Motion also noted that the agreement, as it stood on that date, contained "language agreed upon [sic] the Parties that payment of the Settlement Agreement will occur on May 11, 2016." *Id.* at 1–2. Notably, the language in the opening paragraph, paragraph five (previously four), and paragraph six (previously five) remained unchanged from the April 6, 2016 draft. The Motion asked the Court to extend the deadline to file the joint stipulation of dismissal to May 14, 2016. *Id.* at 2. The following day, on May 3, 2016, the Court granted the requested extension, extending the deadline to May 16, 2016. Doc. 325.

On May 11, 2016, BCC's counsel sent an email to Defendants' counsel indicating that because more than a week had passed since BCC's last revision, and with no response from Defendants, BCC "must conclude that [Defendants] have no material objections." Doc. 328-6, Pl.'s Mot. to Enf., Ex. 4 at 1. A draft agreement was attached that incorporated all of the changes from BCC's most recent mark-up and was signed by BCC. *Id.* at 10. This email also indicated that BCC's

counsel would prepare a "final motion and order" the following day for Defendants' review. *Id.* at 1. Yet again, this version of the agreement—now signed by BCC but not by Defendants—included the original April 6, 2016 effective date and language regarding payment 30 within days thereafter. *Id.* at 2, 6.

On May 16, 2016, the day a joint stipulation of dismissal was due per the Court's May 3 Order, counsel for Defendants returned a signed copy of the settlement agreement and stipulation order to BCC's counsel by email. Doc. 328-7, Pl.'s Mot. to Enf., Ex. 5 at 1. This version appears to be identical to the signed version sent by BCC's counsel on May 11, 2016.[5] Approximately three hours later, counsel for BCC sent an email acknowledging receipt of the signed agreement and stating: "If you can assure me that payment will be delivered by tomorrow, I will promptly file the Stipulation and Order." Doc. 328-8, Pl.'s Mot. to Enf., Ex. 6 at 1. Having not received a response by 5:00 p.m., counsel for BCC sent an email to Defendants' counsel declaring Defendants in breach of the settlement agreement and advising of his intention to file a motion to enforce the agreement. *Id.* at 2. Thirty minutes later, counsel for Defendants responded by email, saying that Defendants had "read the payment to be due in 30 days from today." *Id.*

## B.     *Procedural History*

Instead of filing the joint stipulation of dismissal signed by Defendants, BCC filed an Advisory to the Court on May 16, 2016, advising the Court of Defendants' "breach" of the settlement

---

[5] Exhibit 5 to Plaintiff's Motion to Enforce, which purportedly includes the final signed copy of the agreement returned to BCC's counsel from Defendants on May 16, 2016, appears to be missing pages six through eight of the agreement, which contain part of paragraph nine and all of paragraphs ten through eighteen. However, because Defendants have not challenged the agreement, and because the full, signed agreement was attached to Plaintiff's Advisory to the Court filed on May 16, 2016 (Doc. 326), which the Defendants also have not challenged, the Court assumes the missing pages were omitted from the exhibit by mistake.

agreement and of BCC's intention to immediately file a motion to enforce the settlement agreement. Doc. 326, Pl.'s Adv. 3. Attached was the final version of the agreement signed by all parties. Doc. 326-1, Pl.'s Adv., Attach. 1 at 1–10.

Defendants responded the following day, stating that while the parties had exchanged drafts of the settlement agreement before May 16, 2016, the parties had not agreed on the final language until May 16, 2016, the date Defendants signed the final document. Doc. 327, Defs.' Resp. to Pl.'s Adv. 1. Therefore, Defendants understood the effective date of the settlement agreement to be May 16, 2016, and were prepared to comply within 30 days of that date. *Id.*

Subsequently, BCC filed this Motion to Enforce the Compromise Settlement Agreement on May 26, 2016, seeking an order of the Court enforcing the settlement agreement and awarding BCC reasonable and necessary attorney's fees for prosecuting the Motion to Enforce. Doc. 328, Pl.'s Mot. to Enf. Defendants responded on June 16, 2016. Doc. 329, Defs.' Resp. Therefore, BCC's Motion is now ripe for review.

## II.

## LEGAL STANDARD

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). To determine the validity of a settlement agreement, a federal court sitting in diversity applies the law of the forum state. *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (citing *Cavallini v. State Farm Mut. Ins. Co.*, 44 F.3d 256, 266 (5th Cir. 1995)). Because Texas law applies in this case, Rule 11 of the Texas Rules of Civil Procedure controls this settlement agreement. *Turner v. JPMorgan Chase Bank, N.A.*, No. 3:12-CIV-2701-M (BF), 2015 WL 181762,

at *1 (N.D. Tex. Jan. 14, 2015) (citing *Cavallini*, 44 F.3d at 266; *Williamson*, 947 F. Supp. 2d at 707). Rule 11 requires that an agreement be either: (1) in writing, signed, and filed with the papers of the court; or (2) made in open court and entered of record. *See* Tex. R. Civ. Pro. 11.

In addition to meeting the Rule 11 requirements, to be enforceable "[t]he agreement must contain all of the material terms and be 'sufficiently definite to enable the court to understand the parties' obligations.'" *Turner*, 2015 WL 181762, at *1 (citing *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 323 (5th Cir. 2006)). In construing settlement agreements, courts must attempt to "ascertain and give effect to the parties' intentions as expressed in the document." *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). In so doing, courts will "consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement." *Id.* at 312. Courts should "avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Id.* Ultimately, "[t]he decision whether to grant a motion to enforce a settlement agreement is committed to the discretion of the district court." *Weaver v. World Fin. Corp. of Tex.*, No. 3:09-CV-1124-G, 2010 WL 1904562, at *2 (N.D. Tex. May 12, 2010) (citing *Deville v. U.S. Dept. of Veterans Affairs*, No. 06-30252, 2006 WL 2985918, at *1 (5th Cir. Oct. 18, 2006)).

III.

ANALYSIS

Here, there is no dispute that the settlement agreement was in writing, signed by the parties, and filed with this Court as an attachment to BCC's Advisory to the Court on May 16, 2016. Doc. 326-1, Pl.'s Adv., Attach. 1 at 1–10; *see Williamson*, 947 F. Supp. 2d at 711–12 (noting that both federal and state courts in Texas enforce agreements filed contemporaneously with motions seeking

their enforcement). Therefore, the Court need only concern itself with whether Defendants breached the valid Rule 11 agreement by waiting to pay until 30 days after signing.

In both its Advisory to the Court and its Motion to Enforce the settlement agreement, BCC argues that Defendants had until May 6, 2016, to pay the full settlement amount because the final signed agreement includes an "effective date" of April 6, 2016 and provides for payment within 30 days of the "effective date." Thus, BCC contends, because payment was not delivered by May 6, Defendants were in breach of the settlement agreement. Doc. 328, Pl.'s Mot. to Enf. 8.

Defendants responded to BCC's Motion to Enforce on June 16, 2016, indicating that payment was delivered to BCC on June 15, 2016, *i.e.*, within 30 days of Defendants' having signed the final agreement, as was always Defendants' intention. Doc. 329, Defs.' Resp. 1–2. Therefore, according to Defendants, "there is nothing to enforce" as "there was no breach of the agreement." *Id.* at 2. Defendants contend that they have already "provided the relief requested by Plaintiff" and that "[t]he only purpose for Plaintiff's Motion to Enforce the [settlement agreement] was to accumulate fees." *Id.*

The only apparent significance of the April 6, 2016 date in the settlement agreement's opening paragraph seems to be that it was the date of the email from BCC's counsel to Defendants' counsel to which the first draft of the settlement agreement was attached. This first draft, which the email from BCC's counsel identifies as a "draft" meant "[t]o get the ball moving," had not been signed by—and presumably not approved by—any party. Doc. 328-3, Mot. to Enf., Ex. 1 at 1. Two more drafts would change hands before either party signed what would eventually become the final agreement, with BCC delivering a signed copy to Defendants on May 11, 2016 (Doc. 328-6, Pl.'s Mot. to Enf., Ex. 4 at 1), and then Defendants returning a signed copy to BCC on May 16, 2016

(Doc. 328-7, Pl.'s Mot. to Enf., Ex. 5 at 1. ).

BCC's position appears to be that the April 6, 2016 date was intentionally left untouched throughout the negotiation process; however, this interpretation would require Defendants to have remitted payment of the settlement funds a full ten days before Defendants signed the agreement, and five days before even BCC had signed what would eventually become the finalized version of the agreement. Following this line of reasoning, Defendants would have been in breach of the agreement at the moment they signed it on May 16, 2016, as they had not paid by May 6, 2016. Surely, Defendants could not have incurred an obligation to pay the settlement funds before any party had signed the final version of the settlement agreement, let alone five days before even being presented with the final version.

Furthermore, although BCC contends in its Motion that the agreement "is susceptible to only the interpretation that it became effective on April 6, 2016" and therefore "Defendants had until May 6, 2016 to tender payment in full" (Doc. 328, Pl.'s Mot. to Enf. 8), according to the joint stipulation filed with the Court on May 2, at least as late as this date BCC appears to have understood the agreement's language to have provided for payment on May 11, 2016. *See* Doc. 324, Agreed 2d Mot. for Ext. of Time to File Stip. of Dismiss. 1. Additionally, as late as May 16, 2016, BCC was willing to accept payment on May 17, 2016. Doc. 328-8, Pl.'s Mot. to Enf., Ex. 6 at 1.

It does not appear to be until Defendants expressed their intention to pay within 30 days of having signed the agreement that BCC first became possessed of the notion that payment had actually been due on May 6, 2016. BCC correctly notes in its Motion that "[i]n construing a settlement agreement, the court may not rewrite the contract or add to its language." Doc. 328, Pl.'s Mot. to Enf. 8 (citing *Garza v. Villareal*, 345 S.W.3d 473, 480 (Tex. App.—San Antonio 2011, pet.

denied)). However, the Court is unpersuaded by BCC's contention that the only reasonable interpretation of the settlement agreement is that it took effect on April 6, 2016, and that, therefore, Defendants were required to remit payment by May 6, 2016, a date five days before either party had signed the agreement. That the April 6, 2016 date made its way into the final version of the settlement agreement seems to have been an unfortunate oversight.[6]

IV.

CONCLUSION

Therefore, as settlement funds were ultimately remitted within 30 days of Defendants signing the finalized agreement, the Court, in its discretion, DENIES BCC's Motion to Enforce the settlement agreement as MOOT. Accordingly, BCC's request for attorney's fees is also DENIED.

The Court ORDERS the parties to file a joint stipulation of dismissal or an agreed final judgment on or before September 23, 2016.


SO ORDERED.

SIGNED: September 16, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[6]Similarly, paragraph six of the final agreement describes the settlement funds as "the payment referenced in Paragraph 4 above" (Doc. 326-1, Pl.'s Adv., Attach. 1 at 5). However, due to unrelated changes to the document occurring during the negotiation process, paragraph four no longer references any such payment. Settlement funds are addressed in paragraph five of the final agreement.